**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

ODESSA MOSLEY, et al.,       :

     Plaintiffs,           :

vs.                        :      CA 09-0284-KD-C

WYETH, INC., et al.,       :

     Defendants.

## <u>ORDER</u>

This cause is before the Court on defendant PLIVA, Inc.'s motion to compel discovery from plaintiffs (Doc. 96; *see also* Doc. 97) and plaintiffs' response (Doc. 105). Upon a consideration of these pleadings, with attachments, as well as all other pertinent pleadings in this case, this order is entered pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 72.2(a) & (c)(1).

## <u>FINDINGS OF FACT</u>

1.      On May 21, 2009, plaintiffs filed this lawsuit against PLIVA, Inc. and others asserting entitlement to damages and other relief from the defendants based upon their negligence (Doc. 1, ¶¶ 4.01-4.04), strict liability (*id*. at ¶¶ 4.05-4.07), breach of express and implied warranties (*id*. at ¶¶ 4.08-4.09), misrepresentation and fraud (*id*. at ¶¶ 4.10-4.15), and gross negligence

(*id*. at ¶¶ 5.01-5.03),[1] due to injuries suffered by Odessa Mosley as a result of her prescribed long-term use of Reglan/metoclopramide (*id*. at ¶¶ 3.15 & 3.16). According to Mrs. Mosley, she began ingesting Reglan/metoclopramide as prescribed on a long-term basis beginning in 2005. (*See id*. at ¶¶ 3.08-3.13)

2. The parties filed their Rule 26(f) report on August 13, 2009. (Doc. 51) In paragraph 4, the defendants specifically identified the following subjects for which discovery would be needed: "[P]roduct identification; Plaintiff Odessa Mosley's past and current health, medical conditions, and treatment, including, without limitation, all aspects of her experience and treatment for the symptoms of gastroesophageal reflux disease or other gastrointestinal disorders, and tardive dyskinesia; plaintiffs' education and employment history; and all other issues material to the measure of damages sought by plaintiffs." (*Id*. at 2, ¶ 4) The report otherwise reads, in relevant part, as follows:

> Executed Authorizations. **Defendants request that plaintiffs be required to provide blank, executed medical authorization forms and employment authorization forms from plaintiff Odessa Mosley by September 18, 2009. Defendants will use the forms to obtain Mrs. Mosley's medical and employment records and will provide copies of all documents obtained to plaintiffs' counsel.** If required by

---

[1]    Ms. Mosley's husband, Ulysses Mosley, seeks damages for loss of consortium. (Doc.1, at 24)

the Court, defendants will agree to provide plaintiffs' counsel fourteen (14) days notice before sending a completed authorization form to a medical provider or employer so that plaintiffs' counsel may object to such authorization, if desired.

Defendants make this request because experience in the metoclopramide litigation has shown that the gathering of medical and employment records is the most time-consuming aspect of discovery, but the most important aspect that must be completed before meaningful depositions can take place. Experience also has shown that, without the provision of blank authorizations, significant delays can occur between the times that specific authorizations are requested and executed authorizations are provided. Literally, defense counsel has waited for periods of 6-9 months before such executed authorizations have been provided, despite repeated requests and reminders.

Plaintiff's (sic) counsel is willing to execute medical authorizations that are specifically targeted to identified medical provider, but objects to blank authorizations. Experience has shown that such blank authorizations are ripe for misuse and delving into clearly irrelevant matters, are not restricted to date, and thus have been used for purposes not related to relevant discovery. Likewise, Plaintiffs have no objection to obtaining relevant employment records, but again experience has shown that employment records can often contain matters that are irrelevant to litigation. Plaintiffs have proposed a process by which employment records are produced first to plaintiff's (sic) counsel– if any records are believed to be privileged, irrelevant or otherwise protected from discovery, plaintiff's (sic) counsel will file such materials in camera for the Court to evaluate whether they are truly relevant and discoverable. Allowing defendants to obtain the records without such a redaction period prevents the protection of any such materials.

(*Id.* at 5, ¶ 12 (emphasis supplied))

3

3.     The Rule 16(b) scheduling order was entered in this case on

August 26, 2009 and reads, in relevant part, as follows:

> 1.    <u>ISSUES SUBJECT TO DISCOVERY</u>.  Those specific discovery issues identified by the parties in paragraph 4 of their Rule 26(f) report are the only issues subject to discovery.

.    .    .

> 19.    <u>OTHER MATTERS</u>.

> A.    The parties are to prepare and submit a proposed protective order (see paragraph 12 of Rule 26(f) Report) not later than **September 18, 2009.**[2]

> B.    Plaintiffs ***shall*** provide defendants with executed medical authorization forms and employment authorization forms by **September 18, 2009.** Defendants will complete the executed forms and provide plaintiffs with fourteen (14) days notice before sending a completed form to a medical provider or employer. Within this 14-day period, should plaintiff object to any request for medical or employment information, that request is not to be sent pending a resolution of the objection informally by the parties or by court order. This procedure will protect plaintiffs' opportunity to preclude the production of privileged, irrelevant or otherwise protected information. **Documents are not to be filed under seal without specific authority from the Court.**

(Doc. 53, at 1, ¶ 1 & 8-9, ¶ 19 (footnote added; emphasis in original))

---

[2]    To this end, the parties filed a joint motion for protective order on September 9, 2009 (Doc. 63) and the undersigned entered the protective on September 10, 2009 (Doc. 66).

4.     On December 8, 2009, PLIVA's national counsel, Rex A. Littrell, Esquire, penned a letter to plaintiffs' counsel "inquiring about the non-provision of authorization forms and providing blank medical authorization forms to [] Plaintiffs' counsel." (Doc. 97, Exhibit A, Declaration of Rex A. Littrell, at ¶ 4) Littrell informed plaintiffs' counsel that once he received the executed authorizations from Mrs. Mosley he planned on sending the forms to thirteen (13) medical providers and two (2) pharmacies. (*Id.*)

5.     On December 9, 2009, PLIVA served its first set of interrogatories to plaintiff Odessa Mosley, its first set of interrogatories to plaintiff Ulysses Mosley, and its first request for production of documents to Odessa Mosley. (Doc. 97, Littrell declar., at ¶ 9) PLIVA's Interrogatory No. 1 to Odessa Mosley requested her complete identity, including her social security number (*see* Doc. 97, Exhibit 2 to Littrell declar., at 4); Interrogatory No. 3 requested the identity of Mrs. Mosley's family members, more specifically, her children, parents, grandparents, aunts, uncles, brothers, sisters, and cousins (*id.*); and Interrogatory No. 7 requested detailed information regarding Mrs. Mosley's medical history and providers (*see id.*). PLIVA's Document Production Request 22 sought Mrs. Mosley's execution of authorizations/consents for release of various records. (*See id.,* at 5 & Exhibit

4 to Littrell declar., at 8) Finally, PLIVA's Interrogatory No. 9 to Ulysses Mosley requested an itemization of each element of damages he was requesting. (*See* Doc. 97, Littrell declar., at ¶ 17)

6.      On December 30, 2009, Littrell penned a letter to plaintiffs' counsel regarding execution of medical and employment authorization forms. (Doc. 105, Exhibit 1)

> I am writing in response to Bill's letter dated December 29, 2009, regarding the medical authorization form executed by Mrs. Mosley. In that letter, Bill states that Ms. Mosley does not give her permission for the defendants to use the form to obtain medical records from five medical providers. However, the letter provides no explanation for Mrs. Mosley's objection to the use of the authorization form to obtain records from those five providers.

> In an attempt to resolve this issue informally pursuant to Paragraph 19.B of the of the Scheduling Order entered by the Court on August 26, 2009, please contact me at your soonest convenience to provide me with the reason(s) for Mrs. Mosley's objection to the use of the authorization to obtain records from these medical providers. At a minimum, I will need to know when she saw such providers and for what condition(s) and whether any of them prescribed any medications to her. Furthermore, I will tell you now that it is my position that, at a minimum, I believe medical records from Mrs. Mosley's visits to any medical provider, either before or after she began using metoclopramide, are either relevant or at least calculated to lead to the discovery of admissible evidence because they reflect whether or not the providers noted any type of abnormal movements by Mrs. Mosley during her visits to them. However, I of course am willing to discuss the issue further with you. In the interim, the defendants will use the executed form to obtain

medical records from the other ten providers and pharmacies listed in Bill's December 29 letter.

In addition, having reviewed the Scheduling Order in this case again, I note that Paragraph 19.B requires the provision of blank employment authorization forms. I will forward you blank employment authorization forms next week.

With respect to your objection to the provision of executed authorization forms from Mr. Mosley, please note that Paragraph 19.B of the Scheduling Order requires that he also provide executed medical and employment authorization forms. However, on behalf of PLIVA, I am willing to consider not obtaining the required authorization forms from him if plaintiffs will stipulate that (1) Mr. Mosley will not assert that he saw any type of medical provider as a result of the alleged injuries to Mrs. Mosley; (2) Mr. Mosley will not assert that he missed any work as a result of the alleged injuries to Mrs. Mosley; and (3) Mr. Mosley will not be seeking any type of damages for alleged physical or mental injuries or for missed work as a part of his consortium claim. However, I do not yet know the other defendants' position on this issue, so I will consult with them about it. In the interim, please let me know if plaintiffs will agree to the above.

Please contact me as soon as possible about these issues. Defendants are behind schedule obtaining medical records as a result of plaintiffs' failure to provide executed authorization forms back in September as required by the Scheduling Order, so time is of the essence. Thank you for your anticipated cooperation.

(*Id.*) One of plaintiffs' attorneys, William B. Curtis, Esquire, responded to

the foregoing letter by letter dated January 5, 2010. (*See* Doc. 97, Exhibit 1 to

Littrell declar.) Neither plaintiffs or defendant PLIVA has provided this Court

with a copy of Mr. Curtis' letter but a flavor of same can be discerned from

Mr. Littrell's letter in response dated January 6, 2010. (*See id.*)

> I am writing in response to Bill's letter dated January 5, 2010, written in response to my letter dated December 30, 2009. It is my understanding from Bill's that Mrs. Mosley continues to object to the use of her executed medical authorization to obtain medical records from the five medical providers listed in Bill's letter. Unfortunately, although Bill asserts that "the five different medical providers listed are not evenly remotely related to the consumption of metoclopramide or the injuries resulting therefrom," Bill did not provide me with the information I requested in my December 30 letter so that defendants can determine whether to pursue documents from the requested providers. Because defendants' discovery attempts already have been delayed approximately 3 months as a result of Mrs. Mosley's failure to provide her executed blank authorization as required by Paragraph 19.B of the Scheduling Order in this case, I must insist that you provide that information by no later than Friday, January 8, or PLIVA will be forced to file a motion to compel discovery. However, I also am willing to discuss the issue further with you and other defense counsel if you would like to have a conference call on the afternoon of January 11. Let me know if you would like to schedule a call to discuss this issue.

> I am not going to respond to Bill's assertion that PLIVA has engaged in a "pattern and history of fishing into records not even remotely related to metoclopramide or the injuries resulting therefrom," other than to state that the assertion is nonsense. My December 30 [letter] sets forth PLIVA's position regarding the relevancy of medical records, and PLIVA stands by that position.

> I also note that Bill's letter did not address the provision of an executed medical authorization form by Mr. Mosley. My December 30 letter suggested a possible compromise on that

issue. Please let me know by January 8 if that proposed compromise is acceptable. I am still waiting to hear from other defendants regarding the proposal also.

Finally, enclosed are blank employment authorization forms for Mr. and Mrs. Mosley's signature. Provision of those executed authorizations also is required by Paragraph 19.B of the Scheduling Order, but executed forms have not been provided before now. Mr. Mosley does not need to provide the executed form if the parties all agree on the compromise proposed in my December 30 letter. Please provide the executed forms as quickly as possible.

In conclusion, I must state that I am dismayed by your offices' emerging pattern of blocking and/or delaying legitimate discovery requested by the defendants in this case and other metoclopramide cases. Discovery schedules agreed to by the parties in all cases, including this case, are premised on the belief that cooperation in discovery will take place. However, the failure to provide necessary authorizations by required deadlines and unilateral assertions that discovery will not be permitted because allegedly "irrelevant" throw those agreed schedules into chaos and unnecessarily necessitate motion practice. I am hoping the emerging pattern can be reversed in this and other cases.

Thanks for your anticipated cooperation. Again, please let me know if you would like to conduct a conference call to discuss these issues on Monday, January 11, 2009 (sic).

(*Id.*)

7.     Plaintiff Odessa Mosley served her answers and objections to

PLIVA's first set of interrogatories and her responses and objections to the

defendant's first request for production of documents on January 11, 2010.

(Doc. 97, Exhibits 2 & 4 to Littrell declar.) In addition, plaintiff Ulysses Mosley served his answers and objections to PLIVA's first set of interrogatories on January 11, 2010. (Doc. 97, Exhibit 3 to Littrell declar.)

8.     Odessa Mosley's answers and objections to PLIVA's first set of interrogatories reads, in relevant part, as follows:

1.     Please identify yourself. Four (sic) purposes of this interrogatory, a complete identification should include your full name, including any former names or aliases, present residential address, date and place of birth, and driver's license and social security numbers.

ANSWER:

Odessa Mosley
31262 Coleman Lane
Spanish Fort, AL 36527
DOB: _____– born in Alabama.
DL #: 6327125
SSN: _____

Plaintiff objects to providing her social security number. This request is overly broad, is not calculated to lead to evidence that would be relevant or admissible at trial, violates Plaintiff's right of privacy, and violates the provisions of the Social Security Act.

.     .     .

3.     Please identify your family members. For purposes of this interrogatory, please state the full name, including former names and aliases, the current or last known address and telephone number, date and place of birth,

and date and place of death (if applicable) of each of [y]our children (including any step-children or adopted children), parents, grandparents, aunts, uncles, brothers, sisters, and cousins.

ANSWER:

Carl Mosley– son. Date of birth: _____

Plaintiff objects to the remainder of this interrogatory on the basis that it is overly broad and seeks information not calculated to lead to admissible evidence. In addition, please refer to Plaintiffs' Disclosure responses, and any supplements thereafter, for complete contact information of individuals with any discoverable information.

.     .     .

7.  Please provide a complete medical treatment history. For purposes of this Interrogatory, a complete medical treatment history should include the name, address, and telephone number of each Health Care Provider and/or Health Care Facility (as defined above) where you were ever hospitalized or received care, treatment, or medication, inpatient or outpatient, for any mental or physical illness, injury, condition, or disability and, for each such Health Care Provider and/or Health Care Facility, state the illness, injury, condition, or disability for which you were hospitalized, confined, treated, or received medication or care; the type or nature of the care, treatment, or medications received; and the inclusive dates for each.

ANSWER:

Plaintiff objects as harassing. Please refer to the

medical/pharmacy records.

(Doc. 97, Exhibit 2 to Littrell declar., at 4, 4-5 & 6) Moreover, Odessa

Mosley's responses and objections to PLIVA's first request for production of

documents reads, in part, as follows:

> 22.     Please sign and date the attached Authorizations for
> release of various records of plaintiff (sic). If you refuse
> to execute any of the attached Authorizations, please
> state precisely and specifically the legal and factual
> grounds upon which such refusal is based.
>
> RESPONSE:
>
> Defendant has attached the authorizations listed below;
> Plaintiff objects to signing these authorizations on
> the grounds that it would allow for impermissible
> and irrelevant fishing expeditions into matters that
> are not relevant.
>
> 1. Medical Authorization to Disclose Personal Health
> Information (for Ulysses Mosley)
>
> 2. Medicare Authorization to Disclose Personal
> Health Information
>
> 3. Consent for Release of Information from
> Social Security Administration (for Ulysses
> Mosley)
>
> 4. Consent for Release of Information from
> Social Security Administration
>
> 5. Authorization to Release Financial Records
> (for Ulysses and Odessa Mosley)

6. Authorization to Release Employment Records (for Ulysses Mosley)

7. Authorization to Release Employment Records (for Odessa Mosley)

8. Authorization to Release Educational Information (for Ulysses Mosley)

9. Authorization to Release Educational Information (for Odessa Mosley)

(Doc. 97, Exhibit 4 to Littrell declar., at 8-9) Finally, plaintiff Ulysses Mosley's answers and objections to PLIVA's first set of interrogatories reads, in part, as follows:

> 9. Please itemize each element of damages that you are claiming on your own behalf, including, but not limited to[,] medical and hospital expenses; past and future pecuniary loss; loss of consortium and grief; and any other element of damages claimed, by including the specific dollar amounts you are claiming and by identifying the manner in which each amount [w]as computed. If you are claiming that you have been out of work due to plaintiff Odessa Mosley's alleged injury, please state the dates you were out of work, and the name of your employer.
>
> ANSWER:
>
> Plaintiff Ulysses Mosley has suffered loss of consortium, both past and present. Plaintiff objects to the remainder of the interrogatory in that it is overly broad and burdensome for an Interrogatory and would more appropriately be addressed by way of deposition.

(Doc. 97, Exhibit 3 to Littrell declar., at 6-7)

9.      According to PLIVA's national counsel, Rex Littrell, "[u]pon receipt of Plaintiffs' interrogatory answers and document production responses, [he] attempted in good faith to resolve this discovery dispute without the need for court action. However, Plaintiff's counsel did not respond to [the] request to conduct a conference to discuss the issue." (Doc. 97, Littrell declar., at ¶ 18)

10.     PLIVA filed its motion to compel on January 29, 2010 (Docs. 96-97); plaintiffs' joined the motion to compel, as ordered (*see* Doc. 99), on February 17, 2010 (Doc. 105).

## CONCLUSIONS OF LAW

### A.      Interrogatories.

1.      Federal Rule of Civil Procedure 33 governs interrogatories to parties. Interrogatories must be answered by the party to whom they are directed under oath and must be signed by the person making the answers. Fed.R.Civ.P. 33(b)(3) & (5); *see Estrada v. Palm Beach Metro Transportation, LLC*, 2008 WL 1995097, *1 (S.D. Fla. 2008) ("Federal Rule of Civil Procedure 33 clearly states that Interrogatory Responses must be answered 'under oath.'"); *Cherenfant v. Nationwide Credit, Inc.,* 2004 WL 5315889, *1

n.2 (S.D. Fla. 2004) ("Federal Rule of Civil Procedure 33(b)(3) requires a party to sign interrogatory answers 'under oath.'"). In addition, "the attorney who objects must sign any objections." Fed.R.Civ.P. 33(b)(5).

2.      In this case, neither plaintiff signed the answers to the interrogatories propounded by defendant PLIVA. (*See* Doc. 97, Exhibits 2 & 4 to Littrell declar.) While this failure on the part of plaintiffs is technically sanctionable, *see Walls v. Paulson*, 250 F.R.D. 48, 52 (D. D.C. 2008) ("Rule 33(b)(5) could not be more clear: 'The person who makes the answers must sign them, and the attorney who objects must sign any objection.' [] This requirement is critical because interrogatories serve not only as a discovery device but as a means of producing admissible evidence; there is no better example of an admission of a party opponent, which is admissible because it is not hearsay, than an answer to an interrogatory.' . . . Moreover, the plaintiff not only failed to sign her initial response to the interrogatories, but she also failed to sign her supplemental response. . . . Accordingly, the plaintiff is subject to sanctions for this oversight as well."), the only manner in which this Court will sanction plaintiffs in this regard is by ordering them to immediately sign their interrogatory responses as required by Rule 33(b)(5) *nunc pro tunc* to January 11, 2010 and to caution them that any future failure to sign

interrogatory responses will result in an appropriate monetary sanction. The undersigned deems this an appropriate "sanction" at this point in time since PLIVA's real bone of contention with plaintiffs involves the "objections" interposed by plaintiffs to identified interrogatories (*see* Doc. 97, at 4-5 & 6).

3.      "The propounding party may seek an order to compel further responses regarding 'an objection to or other failure to answer an interrogatory.'" *James Brooks Co., Inc. v. Certain Underwriters at Lloyd's London*, 2006 WL 2168195, *3 (E.D. Cal. 2006). Once the low burden of relevance of the requested discovery is established, "the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request." *Heartland Surgical Specialty Hospital, LLC v. Midwest Division, Inc*., 2007 WL 950282, *1 (D. Kan. 2007) (citations omitted).

4.      Turning first to Interrogatory 9 propounded to plaintiff Ulysses Mosley, it cannot be gainsaid that this interrogatory is relevant on its face, based on the allegations in the complaint and Mr. Mosley's state-law claim for loss of consortium, thereby shifting the burden of persuasion to support his objections to plaintiff Ulysses Mosley. In this regard, "[a] party resisting discovery has the burden to support its objection[;]" therefore, an  objecting party's failure to provide argument or evidence in support its objections (e.g.,

vagueness, ambiguity, privilege, etc.) to propounded discovery will result in the court's overruling of such objections. *Black & Veatch Int'l Co. v. Foster Wheeler Energy Corp.*, 2001 WL 1718295, *2 (D. Kan. 2001) (citations omitted); *see also Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991) ("Bare assertions that the discovery requested is overly broad, burdensome, oppressive or irrelevant are ordinarily insufficient, standing alone, to bar production. . . . It is therefore [the] burden [of the party opposing discovery] . . . to clarify and explain how each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome."); *see Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 661-662 (D. Kan. 2004) ("Unless an interrogatory is overly broad on its face, the party resisting discovery has the burden to support its overbreadth objection."). Accordingly, plaintiff Ulysses Mosley's bare assertion that Interrogatory 9 propounded to him is " overly broad and burdensome for an Interrogatory and would more appropriately be addressed by way of deposition[,]" (Doc. 97, Exhibit 3 to Littrell declar., at 7) is due to be and hereby is **OVERRULED**. Plaintiff Ulysses is **ORDERED** to answer this interrogatory completely and non-evasively not later than **March**

**17, 2010.**[3]

5.      With respect to the interrogatories propounded to Odessa Mosley to which PLIVA takes issue, it is clear to the undersigned that PLIVA's motion to compel this plaintiff to provide her social security number in response to Interrogatory No. 1 (Doc. 97, at 4) is now **MOOT** inasmuch as Mrs. Mosley's counsel has agreed to provide this number, along with Mr. Mosley's social security number under cover of letter (Doc. 105, at 2).[4] If

_____

[3]      While it is now clear that Mr. Mosley is making no claim for lost income/wages or income potential (Doc. 105, at 6) or a claim for any physical or psychological injury to himself in connection with the claims herein (*id.* at 7) and that ALABAMA LAW OF DAMAGES at § 20:3 provides that "[t]he spouse is not required to itemize the services that he or she claims was lost[,]" these are "objections" which should have been interposed by counsel on January 11, 2010, not now. Because they were not interposed then they are now waived and this plaintiff is to specifically make such statements in answer to Interrogatory 9, that is, that he is not seeking recovery of any such damages. In addition, plaintiff Ulysses Mosley can certainly identify whether he seeks recovery for any expenses incurred in the procurement of medical services for treatment of his wife's tardive dyskinesia and the amount he seeks to recover therefor, *see Morrisson v. Clark*, 196 Ala. 670, 72 So. 305, 309 (Ala. 1916), identify more specifically what his loss of consortium claim entails, for example, that his claim includes loss of sexual relations as well as loss of "'love, companionship, affection, society, comfort, solace, support, . . . and services,'" *Ex parte N.P.*, 676 So.2d 928, 931 (Ala. 1996), and the general amount he ***now*** has in mind to ask the jury to award him for loss of consortium. In doing so, however, plaintiff does not have to state he wants a certain sum for loss of sexual relations, another certain sum for loss of love, etc.; he simply need state he is seeking a sum certain for loss of sexual relations, love, companionship, services, etc., that is, everything that characterizes his loss of consortium claim.

[4]      This concession by plaintiffs' counsel, as well as other concessions (*see* Doc. 105, at 6), makes it clear to the undersigned that this matter could have been significantly narrowed by the parties had counsel been more cooperative. The undersigned takes this opportunity to remind counsel that cooperation during discovery is expected in this district. *See* INTRODUCTION TO CIVIL DISCOVERY PRACTICE IN THE SOUTHERN DISTRICT OF ALABAMA, at I.A. (Civil Practice Federal Court Committee 1998). Should the spirit of

plaintiffs have yet to provide these numbers to PLIVA's counsel they are **ORDERED** to do so not later than **March 17, 2010**.

6. Interrogatory No. 3 propounded to plaintiff Odessa Mosley requested her to identify by name, address, and telephone number her children, parents, grandparents, aunts, uncles, brothers, sisters, and cousins and, where applicable, the date and place of death of any foregoing family members. Given plaintiff's claim that her tardive dyskinesia was caused by prolonged use of Reglan/metoclopramide, as opposed to a genetic predisposition to same, and the defendants' defenses to Mrs. Mosley's claims, the undersigned is of the opinion that the information PLIVA seeks in Interrogatory No. 3 is arguably relevant. (*See* Doc. 105, at 4 ("Even if an argument could ne made that Pliva has an interest in learning the medical conditions of remote relatives, records of *those medical conditions* are protected under HIPAA.")) However, the interrogatory is also overly broad on its face to the extent it seeks the identity of all of Mrs. Mosley's cousins. The interrogatory is not otherwise overly broad and, therefore, this plaintiff's base assertion in this regard (as well as the bare assertion that same is irrelevant) is **OVERRULED** and Mrs.

―――――――――

cooperative discovery envisioned by this Court's Discovery Plan remain cast aside in this case, the undersigned will find it necessary to hold a hearing at which the presence of lead counsel will be required.

Mosley is **ORDERED** to identify by name, address, and telephone number (or by date and place of death) her parents, grandparents, aunts, uncles, brothers and sisters not later than **March 17, 2010.**

7.      Turning to the final interrogatory made the basis of the motion to compel, Interrogatory No. **7** to Odessa Mosley, there can be no doubt that Mrs. Mosley's medical treatment history is relevant to the claims she makes in the complaint. However, Interrogatory No. 7 is also unequivocally over broad on its face because the interrogatory does not confine itself to a certain period of time; instead, it appears that PLIVA desires to discover Mrs. Mosley's medical treatment history from the day she was born to date. (*See* Doc. 97, Exhibit 2 to Littrell declar., at 6) Because it is overly broad on its face it is also, as Odessa Mosley's counsel asserts, harassing. Therefore, in response to this interrogatory Mrs. Mosley's counsel properly referred PLIVA to the medical/pharmacy records. This Court will not compel any further response to this interrogatory.

     **B.**      **Document Production Request No. 22 to Odessa Mosley.**

8.      The undersigned considers PLIVA's document request 22 in connection with its overarching contention that plaintiffs have not provided it with all the executed medical authorization forms and executed employment

authorization forms contemplated in the Rule 16(b) scheduling order (*see* Doc. 97, at 1-3) since this document request specifically asks plaintiffs to execute the following authorizations and consents:

>  1.  Medicare Authorization to Disclose Personal Health Information (for Ulysses Mosley)
>
>  2.  Medicare Authorization to Disclose Personal Health Information
>
>  3.  Consent for Release of Information from Social Security Administration (for Ulysses Mosley)
>
>  4.  Consent for Release of Information from Social Security Administration
>
>  5.  Authorization to Release Financial Records (for Ulysses and Odessa Mosley)
>
>  6.  Authorization for Employment Records (for Ulysses Mosley)
>
>  7.  Authorization to Release Employment Records (for Odessa Mosley)
>
>  8.  Authorization to Release Educational Information (for Ulysses Mosley)
>
>  9.  Authorization to Release Educational Information (for Odessa Mosley)

(Doc. 97, Exhibit 4 to Littrell declar., at 8-9)

9.  While it is clear that this Court set forth a procedure for the parties to follow with respect to medical and employment authorization forms

(Doc. 53, ¶ 19.B.) and that plaintiffs failed to provide defendants with executed blank forms by September 18, 2009 (*compare id. with* Doc. 97, at 2), it is also apparent to the undersigned that PLIVA did not begin to push plaintiff on this front until early December of 2009 (*see* Doc. 97, at 2). Once PLIVA sent its December 8, 2009 letter to plaintiffs' counsel, however, the procedure set forth by the undersigned was expected to be followed. In particular, though PLIVA actually provided blank medical authorization forms to plaintiffs' counsel for their convenience (instead of what should have been the reverse, plaintiffs' counsel sending blank medical authorization forms to defendants),[5] and indicated to plaintiffs' counsel that PLIVA would be sending the form executed by Odessa Mosley to 13 medical providers[6] and 2 pharmacies, plaintiffs should have specifically informed PLIVA, in the letter penned December 28, 2009, of their objections to sending the form to any of the medical providers listed (*see* Doc. 53, at ¶ 19.B. ("Within this 14-day period, should plaintiff object to any request for medical or employment information, that request is not to be sent pending a resolution of the objection

---

[5]     The parties simply eliminated one step of the procedure doing it in this manner.

[6]     Six of the thirteen medical providers had been disclosed in plaintiffs' initial disclosures. (Doc. 97, Littrell declar., at ¶ 4) The remaining seven (7) medical providers were gleaned by PLIVA from plaintiff Odessa Mosley's pharmacy records. (*Id.*)

22

informally by the parties or by court order. This procedure will protect plaintiffs' opportunity to preclude the production of privileged, irrelevant or otherwise protected information."")). However, all that is apparent to the undersigned is that when plaintiffs' counsel forwarded the blank authorization form signed by Odessa Mosley to counsel for PLIVA, permission was given for use of the form to obtain medical records from the 2 pharmacies and 8 medical providers but for the remaining five medical providers plaintiffs' counsel refused to give permission to use the form to obtain records from them (Doc. 97, Littrell declar., at ¶ 5) without specifically identifying why they were objecting to use of the form to obtain medical records from those five medical providers.[7] Therefore, plaintiffs' January 5, 2010 suggestion that the records from these five providers are irrelevant comes too late and is **OVERRULED**. Accordingly, the undersigned **AUTHORIZES** PLIVA to use the medical authorization form executed by Odessa Mosley to obtain medical records from Dr. George Corbett, Dr. Erin Dawkins, Dr. C. Douglas Harrell, Dr. Heather

---

[7]     Based upon plaintiffs' brief, it is clear that the five medical providers are the following: (1) Dr. George Corbett, Mrs. Mosley's orthopedic surgeon; (2) Dr. Erin Dawkins, Mrs. Mosley's gynecologist; (3) Dr. C. Douglas Harrell, Mrs. Mosley's dentist; (4) Dr. Heather Haley, Mrs. Mosley's dermatologist; and (5) Dr. Charles Smith, Mrs. Mosley's general surgeon. (Doc. 105, at 2)

Haley, and Dr. Charles Smith.[8]

10.     In addition, while plaintiffs refused, in the letter dated December 29, 2009, to produce an executed medical authorization for Mr. Mosley (Doc. 97, Littrell declar., at ¶ 5), and, as a result, have certainly waived any legitimate objection they might have to producing same, in light of the plaintiffs' admission that Mr. Mosley has sought no medical treatment related to his loss of consortium claim, the undersigned does not find it necessary, at this point in time, to order Mr. Mosley to execute a medical authorization form. While Mr. Mosley can certainly give testimony regarding any "physical and mental injuries" he has incurred as a result of his wife's injuries, he can offer no medical evidence in support thereof given his position that none exists. This portion of the motion to compel is found to be **MOOT**. Accordingly, at present, the undersigned will not require Mr. Mosley, in connection with production request No. 22 propounded to Odessa Mosley, to execute a medical authorization for release of health records or execute a consent for release of information from the Social Security Administration.

---

[8]     Inasmuch as these five medical providers were identified by PLIVA from pharmacy records voluntarily disclosed by plaintiff Odessa Mosley it is unclear to the undersigned how plaintiffs can so confidently stake the position that records from these five providers are wholly irrelevant or that review of same cannot possibly lead to the discovery of admissible evidence.

The undersigned agrees with plaintiffs that these documents are not relevant to this matter at present since Mr. Mosley has stipulated that he never saw any type of medical provider as a result of the alleged injuries to his wife (*see* Doc. 97, at 3).

11.     What remains of PLIVA's production request No. 22 to Odessa Mosley consists of the (1) medicare authorization to disclose personal health information; (2) consent for release of information from Social Security Administration; (3) authorization for release of financial records; (4) authorization to release employment records (for Ulysses Mosley); (5) authorization to release employment records (for Odessa Mosley); (6) authorization to release educational information (for Ulysses Mosley); and (7) authorization to release educational information (for Odessa Mosley). Plaintiffs objected to signing the foregoing authorizations in connection with this request for production "on the grounds that it would allow for impermissible and irrelevant fishing expeditions into matters that are not relevant." (Doc. 97, Exhibit 4 to Littrell declar., at 8) While the undersigned agrees with plaintiffs that neither the financial records of the Mosleys or the employment or educational information of Ulysses Mosley are relevant to any claim or defense in this case, particularly in light of Mr. Mosley's

representation that he is not claiming any damages for lost wages (Doc. 105, at 4),[9] there can be no agreement that Odessa Mosley's medicare health information, employment records, and educational records are not relevant to the claims or defenses asserted in this case, the defendants specifically stating in the Rule 26(f) report that "discovery will be needed on . . . Plaintiff Odessa Mosley's past and current health, medical conditions, and treatment, including, without limitation, all aspects of her experience and treatment for the symptoms of gastroesophageal reflux disease or other gastrointestinal disorders, and tardive dyskinesia; *plaintiffs' education and employment history*; and all other issues material to the measure of damages sought by plaintiffs[,]" (Doc. 51, at ¶ 4 (emphasis supplied)) and the undersigned specifically noting that discovery would be limited by the issues set forth in ¶ 4 of the Rule 26(f) report (Doc. 53, ¶ 1). Accordingly, plaintiff Odessa Mosley is **ORDERED** to provide defendant PLIVA with the following executed authorizations not later than **March 17, 2010**: (1) medicare authorization to disclose personal health information; (2) consent for release of information

---

[9]       In other words, Ulysses Mosley has effectively stipulated that he will not assert that he missed any work as a result of the alleged injuries to Mrs. Mosley and that he will not be seeking any damages for missed work as a part of his consortium claim (*see* Doc. 97, at 3). The undersigned would also note in connection with the Rule 26(f) report the defendants only mentioned obtaining Odessa Mosley's medical and employment records by executed authorizations, not Ulysses Mosley's medical and employment records. (*See* Doc. 51, at 5)

from Social Security Administration; (3) authorization to release employment records;[10] and (4) authorization to release educational information.

12.     The undersigned declines to grant PLIVA an award of attorney's fees incurred in bringing its motion to compel. (*See* Doc. 97, at 12)

## CONCLUSION

In light of the foregoing, defendant PLIVA, Inc.'s motion to compel (Doc. 96; *see also* Doc. 97) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs are **ORDERED** to supply PLIVA with the following information not later than **March 17, 2010**: (1) the identity, by name, address, and telephone number (or by date and place of death) of Odessa Mosley's parents, grandparents, aunts, uncles, brothers and sisters, in response to Interrogatory No. 3 to Odessa Mosley; (2) a complete and non-evasive answer to Interrogatory No. 9 propounded to Ulysses Mosley; and (3) Odessa Mosley is to execute a medicare authorization to disclose personal health information, a consent for release of information from Social Security Administration, an authorization to release employment records, and an authorization to release

---

[10]     Given Mrs. Mosley's emphatic position that she "is <u>not</u> <u>seeking</u> lost wage or lost earning capacity damages[]" (Doc. 105, at 3), the parties can, of course, mutually agree that there is no longer any reason for Mrs. Mosley to execute the authorization for her employment records. However, if PLIVA insists on execution of the authorization for employment records, Mrs. Mosley must provide that authorization to this defendant.

educational information.[11] In addition, the undersigned specifically **AUTHORIZES** PLIVA to use Odessa Mosley's signed medical authorization form to obtain medical records from Dr. George Corbett, Dr. Erin Dawkins, Dr. C. Douglas Harrell, Dr. Heather Haley, and Dr. Charles Smith. The remaining portion of PLIVA's motion to compel is deemed **MOOT** or otherwise is **DENIED**, as heretofore indicated.

       **DONE** and **ORDERED** this the 3rd day of March, 2010.

        s/WILLIAM E. CASSADY           
       **UNITED STATES MAGISTRATE JUDGE**

---

[11]     As indicated in the body of this order, plaintiffs are to immediately sign their interrogatory responses as required by Fed.R.Civ.P. 33(b)(5) *nunc pro tunc* to January 11, 2010.